858 So.2d 1220 (2003)
Harry and Suzanne KURCHNER, Appellants,
v.
STATE FARM FIRE AND CASUALTY CO., Appellee.
No. 3D03-249.
District Court of Appeal of Florida, Third District.
November 12, 2003.
Paul Morris, Freshman, Freshman & Traitz, Miami, for appellants.
Richard A. Warren, Miami, for appellee.
Before COPE, SHEVIN, and RAMIREZ, JJ.
RAMIREZ, J.
Harry and Suzanne Kurchner appeal from an adverse summary judgment. Because we do not construe State Farm's insurance policy to provide coverage, we affirm.
Harry Kurchner is a recipient of cancer chemotherapy treatment. Prior to undergoing chemotherapy treatment, he and his wife, Suzanne Kurchner, decided to cryopreserve[1] Harry's sperm with South Florida Institute for Reproductive Medicine ("SFIRM"). Cryopreservation offered the Kurchners an opportunity to have children in the future should Harry's chemotherapy treatment make him sterile. Harry subsequently deposited five sperm samples with SFIRM. SFIRM was to store the sperm samples separately in tanks maintained with alarms which were to set off when the cooling apparatuses of the tanks failed. SFIRM instead stored all of the samples together and the samples were destroyed when the storage tank's cooling apparatus failed. Harry eventually became sterile as a result of his chemotherapy treatment.
The Kurchners filed suit against SFIRM seeking damages arising from the destruction of Harry's cryopreserved sperm. Appellee State Farm Fire and Casualty Co. provided SFIRM with Comprehensive Business Liability insurance. When State Farm denied coverage and refused to defend it, SFIRM filed a declaratory relief action contending that State Farm had a duty to defend and indemnify SFIRM. The Kurchners and SFIRM entered into a *1221 settlement agreement in which the Kurchners assumed SFIRM's rights.
The State Farm policy, under section IIComprehensive Business Liability, provides coverage for "bodily injury, property damage, personal injury or advertising injury." The Definitions section of the policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from the bodily injury, sickness or disease at any time." Coverage would otherwise be excluded, under section II(d)Comprehensive Business Liabilityfor property damage that is "personal property in the care, custody or control of any insured."
Both sides moved for summary judgment. The trial court entered judgment in State Farm's favor finding that the "sperm outside of the body is property and is not a part of the body" and concluding that there was no "bodily injury" under State Farm's policy. We agree.
Terms utilized in insurance policies are given their plain and unambiguous meaning. See State Farm Fire & Cas. Co. v. Castillo, 829 So.2d 242, 244 (Fla. 3d DCA 2002). If the language in the insurance policies is unambiguous, the rules of construction mandate that the policy as written be given its full force and effect. See U.S. Fire Ins. Co. v. Morejon, 338 So.2d 223, 225 (Fla. 3d DCA 1976).
The Kurchners argue that State Farm's coverage for damages to "bodily injury" includes Harry's sperm as a part of his body according to the definition of "bodily" defined as "of or pertaining to the body." If we were to agree with the Kurchners that the policy provides coverage, we must first agree with the proposition that sperm removed from a body constitutes a "bodily injury" sustained "by a person." This creates an issue of first impression in Florida and comes to this Court under the most unfortunate of circumstances for the Kurchners. Cases from other jurisdictions, Florida Statutes, and the common understanding of the relevant terms demonstrate, however, that cells removed from a body no longer constitute part of the body and instead constitute property whose destruction is not considered bodily injury.
Florida Statutes that govern the donation and disposition of sperm recognize that sperm removed from the body becomes property. For example, section 742.14, Florida Statutes (2002), provides that "[o]nly reasonable compensation directly related to the donation of eggs, sperm, and preembryos shall be permitted." Section 742.17, Florida Statutes (2002), recognizes that control over the disposition of eggs, sperm, and preembryos may be governed by a written agreement.
Cases from other jurisdictions hold that preserved sperm or eggs constitute personal property. In Hecht v. Superior Court, 16 Cal.App.4th 836, 20 Cal.Rptr.2d 275, 283 (1993), the court held that a deceased sperm donor had an interest in his sperm which fell within the broad definition of "property" under the state's probate code. The court in Moore v. Regents of University of California, 51 Cal.3d 120, 271 Cal.Rptr. 146, 793 P.2d 479 (1990), likewise treated excised cells as "property" for purposes of a conversion action, but did not agree for policy reasons to extend the conversion liability to cover the unauthorized use of such cells.
For these reasons, the trial court properly found that sperm outside of the body is property that is not a part of the body upon which coverage existed under the definition of "bodily injury" in State Farm's insurance policy.
Affirmed.
NOTES
[1] This is a procedure through which tissues or organs can be preserved at extreme low temperatures.